IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ANDREW HOEL, | CV 25–138–M–DLC |
| Plaintiff, | |
| vs. | OPINION |
| | and ORDER |
| LAKE COUNTY, MATTHEW DOUGHERTY, NANCY DOUGHERTY, BEN WOODS, DEVON McCREA, FRED J. NELSON, JOHN DOTY, DICK WUNDERLICH, RON ROBERTS, R. JACK CLAPP, and JOHN DOES 1-5, | |
| Defendants. | |

Before the Court is Defendants Fred J. Nelson, John Doty, Dick Wunderlich,

Ron Roberts, and R. Jack Clapp's (collectively, "Board Members") Motion to

Dismiss Plaintiff Count IV of Plaintiff Andrew Hoel's First Amended Complaint.

That motion is denied for the reasons provided below.

**FACTUAL BACKGROUND[1]**

Andrew Hoel was a member of the Polson Rural Fire District for 16 years.

In 2023, Hoel settled a dispute involving a jointly owned LLC with Defendants

---

[1] The background section is taken from the First Amended Complaint, (Doc. 37).
The facts are assumed to be true for the purpose of resolving the present motion.
*Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021).

Matthew Dougherty and Nancy Dougherty. Following the settlement, the Doughertys made a series of defamatory statements and allegations of criminal conduct against Hoel, prompting Lake County to charge him with two felony counts of exploitation of older person, incapacitated person, or person with developmental disability, Mont. Code Ann. § 45–6–333. Board Members, acting as Trustees of the Polson Rural Fire District, revoked Hoel's membership based on these criminal charges. Hoel appealed, and Board Members responded by notifying Hoel that "[t]he Board will take no action on the appeal until a future appropriate time when your situation has stabilized. It will be in touch at that time." After criminal charges against Hoel were dismissed, he wrote to the Polson Rural Fire District to renew his appeal. Board Members responded that his appeal had already been denied. In terminating Hoel, Board Members failed to comply with the Polson Rural Fire District's disciplinary policies.

On March 6, 2026, Hoel filed a First Amended Complaint alleging, in relevant part, that Board Members deprived him of procedural due process under both the Montana and United States constitutions when they terminated his position as a volunteer firefighter without an opportunity to be heard (Count IV). Board Members seek to dismiss Hoel's procedural due process claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 52.) Hoel opposes, or, alternatively, asks for leave to amend. (Doc. 57.)

2

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted).

## DISCUSSION

Hoel has alleged that Board Members denied him due process of law by terminating his status as a volunteer firefighter, promising him that no action would be taken on the appeal of his termination until separate criminal proceedings were resolved, and then denying his appeal in violation of the Polson Rural Fire District's disciplinary policies. (Doc. 37 at ¶¶ 57-65.) In moving to dismiss, Board Members assert that Hoel fails to allege facts sufficient to show they acted under the color of state law or that he was deprived of a constitutionally protected property interest, both of which are preconditions for a due process suit under 42

3

U.S.C. § 1983. Board Members also argue they are entitled to absolute personal immunity under Montana law and qualified immunity, and that official capacity claims against them are actually against the entity. Ultimately, Hoel has satisfied the preconditions for a procedural due process claim, Board Members are not immune from state law claims, and a determination of qualified immunity is inappropriate at this stage.

### A.    Color of State Law

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In arguing the status of Board Members, both parties rely on an analysis of the "*Kirtley* factors," which are used to determine whether action by a private party is "fairly attributable as state action" because the private party "is a willful participant in joint action with the State or its agents." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). But under Montana law, a rural fire district board "is a subdivision of the State of Montana. The Board's duties include providing personnel for the [district]." *Zunski v. Frenchtown Rural Fire Dept. Bd. of Trustees*, 309 P.3d 21, 23 (Mont. 2013). Therefore, Board Members are public employees performing public duties when they hire and fire personnel. *See* Mont.

4

Code Ann. § 2–9–101(2)(a), (3) (defining "[e]mployee" as "an officer, employee, or servant of a governmental entity, including elected or appointed officials" and "[g]overnmental entity" as "the state and political subdivisions"); *Gardiner-Park Cnty. Water & Sewer Dist. v. Knight*, 549 P.3d 1151, 1155 (Mont. 2024) ("The parties do not dispute that [Gardiner-Park County Water and Sewer District] Board Members are public officers.") With limited exception, "[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 49–50. Because Board Members were public employees acting in their official capacity, they acted under the color of state law when they terminated Hoel's volunteer position.

## B.     Protected Property Interest

Under the Due Process Clause of the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend XIV, § 1. Likewise, under the Montana Constitution, "[n]o person shall be deprived of life, liberty, or property without due process of law." Mont. Const., art. 2, § 17. Procedural due process claims have two elements: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of*

5

*Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998); *accord Mont. Media, Inc. v. Flathead Cnty.*, 63 P.3d 1129, 1141 (Mont. 2003).

A property interest is "more than an abstract need or desire" or a "unilateral expectation"; rather, a person must have a "legitimate claim of entitlement" to the benefit at issue. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Property interests "are not created by the Constitution[,]" but instead are "defined by existing rules or understandings that stem from an independent source such as state law." *Id.*; *see Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *United States v. Guillen-Cervantes*, 748 F.3d 870, 872 (9th Cir. 2014). When the law "contains mandatory language that restricts the discretion" of the body administering the benefit, it is more likely that the benefit is a protected property interest. *Kraft v. Jacka*, 872 F.2d 862, 868 (9th Cir. 1989) *abrogated on other grounds by Dennis v. Higgins*, 498 U.S. 439, 442 n.2 (1991). On the other hand, if a statute gives the administering body broad authority to act with regard to the benefit, then the plaintiff is less likely to establish that he or she is entitled to that benefit. *Id.* "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

Here, Hoel argues that he has alleged three bases which could each establish

a property interest: (1) Board Members' promise to pause his appeal, (2) the benefits associated with his volunteer status, and (3) the disciplinary procedures of the Polson Rural Fire District. Only his last argument is persuasive.

### 1.    Board Members' Letter

Hoel first argues that he formed a mutually explicit understanding with the Board when they sent him a letter stating, "[t]he Board will take no action on the appeal until a future appropriate time when your situation has stabilized. It will be in touch at that time." (Doc. 37 at ¶ 25.) The letter did not, by itself, create a protected property interest.

In *Hyland v. Wonder*, a volunteer for the San Francisco Juvenile Probation Department received a similar "promise[] that [his] volunteer status was to continue until he received a pardon," which would make him eligible for full-time employment. 972 F.2d 1129, 1132 (9th Cir. 1992). The *Hyland* court found that this language could not "be elevated to the status of a legal entitlement" because, while it "may have reflected [the parties'] expectations," it did not "include[] an explicit promise that Hyland's volunteer status would not be terminated prior to the pardon." *Id.* at 1140. Similarly, the Board Members' letter only promises to pause Hoel's appeal and to contact him at some point, not to restore his volunteer status upon dismissal of the criminal charges against him. There was no mutually explicit understanding sufficient to create an expectation of continued volunteer status.

7

## 2.    Benefits

Hoel also asserts that the benefits tied to his volunteer status—reimbursement of expenses, a stipend up to $3,000 per year, the potential for a pension, worker's compensation, and disability insurance—created a protected property interest even though he "generally agrees there is no property interest in a 'volunteer status.'" (Doc. 57 at 9.) His position finds no support in the law. Reimbursement of expenses and worker's compensation only have value if Hoel incurs expenses or injuries while performing his duties as a volunteer firefighter. Because they are inextricably tied to his position, they cannot establish an independent legal entitlement. *See Versarge v. Township of Clinton N.J.*, 984 F.2d 1359, 1370 (3d Cir. 1993) (declining to recognize a protected property interest where "[t]he utility and value of each of these supposed benefits is inextricably tied to the [volunteer] position from which plaintiff was expelled"); *Dunkel v. Mt. Carbon/N. Manheim Fire Co.*, 970 F. Supp. 2d 374, 380–81 (M.D. Pa. 2013) (declining to recognize a volunteer firefighter's entitlement to use of a social hall, firefighter training, life membership status, and death benefits because they were "*de minimis*" and inextricably tied to the position from which he was expelled). Similarly, Hoel does not allege that his right to a partial pension is threatened by his termination or that he had a vested property interest in a full pension. *See Siena Corp. v. Mayor and City Council of Rockville Maryland*, 873 F.3d 456, 462 (4th

8

Cir. 2017) ("Constitutionally protected property interests are necessarily vested, as it is only upon vesting that a property interest becomes the sort of legitimate claim of entitlement that the Fourteenth Amendment protects."). Crucially, Hoel cites no law, rule, or mutually explicit understanding that would create a legal entitlement to any of these benefits independent of his volunteer status.[2]

### 3.    Volunteer Status

Ultimately, Hoel's property interest claim finds some traction in the protections afforded volunteer firefighters under Montana law. State law and municipal ordinances may provide a basis for a property interest in volunteer status. "A statute will create an entitlement to a governmental benefit either if the statute sets out conditions under which the benefit *must* be granted or if the statute sets out the *only* conditions under which the benefit may be denied." *Allen v. Beverly Hills*, 911 F.2d 367, 370 (9th Cir. 1990) (internal quotation marks omitted). "[A] benefit is not a protected entitlement if government officials may

---

[2] The parties' emphasis on the nature and extent of these benefits is misplaced. Property rights in a government benefit are defined by the procedures which govern its conferral, not its weight or gravity, *Goss v. Lopez*, 419 U.S. 565, 575-76 (1975), and the Ninth Circuit generally considers *de minimis* analysis inapplicable in procedural due process cases, *Brittain v. Hansen*, 451 F.3d 982, 1000 (9th Cir. 2006); *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1191 (9th Cir. 2015) ("The property interests that due process protects extend beyond tangible property and include anything to which a plaintiff has a legitimate claim of entitlement."). Even if a *de minimis* analysis were relevant, *Goss*, 419 U.S. at 576, Hoel's $3000 annual stipend and disability insurance satisfy this threshold.

9

grant or deny it in their discretion[,]" *Gonzales*, 545 U.S. at 748, and "termination procedures lacking any right to an appeal proceeding demonstrate a lack of a property interest," *Palm v. L.A. Dept. of Water & Power*, 889 F.3d 1081, 1086–87 (9th Cir. 2018). "A property interest in employment can, of course, be created by [local] ordinance... however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344 (1976); *see also Palm*, 889 F.3d at 1085 ("Because the City of Los Angeles is the employer in this case, our review of 'applicable state law' turns on an analysis of the City's charter and applicable personnel rules."). Local termination protections may thus create a protected property interest unless they conflict with state law. *See, e.g.,* *Hollister v. Forsythe*, 22 F.3d 950, 952 (9th Cir. 1994) (holding that for-cause removal protections in the Rosebud County Personnel Policy did not create a protected property interest because Montana's employment-at-will statute denied such protections).

In determining whether state and local laws create a property interest in employment, the nature of the position matters less than the reasonable expectations created by the provisions. "Whether a property interest exists is... informed by the process involved in terminating an employee, rather than any talismanic labels applied to a particular position—e.g., whether it is permanent or probationary." *Palm*, 889 F.3d at 1085. Regardless of the nature of a position, "an

10

important factor in deciding the property interest question is to determine whether the applicable state law restricts the grounds on which an employee may be discharged such that *even a probationary employee* could have a reasonable expectation of continued employment." *Id.*

Some jurisdictions have extended this proposition beyond employment, affording due process protections to volunteer firefighters based on policies limiting their termination. *See, e.g., Ratajack v. Brewster Fire Dept., Inc. of the Brewster-S.E. Jt. Fire Dist.*, 178 F. Supp. 3d 118, 139 (S.D.N.Y. 2016) ("It is well-settled that in New York, volunteer firefighters are considered public employees and must be afforded due process in disciplinary proceedings.") (alterations omitted); *Barnes v. Sandy Tp. Bd. of Trustees*, 1991 WL 122343, at *3 (Ohio App. June 25, 1991) ("[A]ppellant, as a township volunteer fire fighter, had a protected property right and may not be deprived of same without due process of law.")

Due process analysis in this circuit has also looked beyond the nature of a volunteer position to the reasonable expectations created by state and local termination procedures. In *Jordan v. Echo Rural Fire Protection District #7-403*, for example, the court denied summary judgment to a rural fire district because "material questions of fact exist[ed] as to whether plaintiff had a property interest created by [the fire district]'s constitution, which provided that volunteer firefighters could only be removed 'with cause.'" 2007 WL 892971, at *6 (D. Or.

11

Mar. 20, 2007). In *Doe v. Pasadena Unified School District*, the court found no protected property interest because California "statutes provide government officials discretion to deny parents opportunities to volunteer." 810 F. App'x 500, 504 (9th Cir. 2020). Similarly, in *Hyland*, there was no property interest in a volunteer position because "[t]emporary, non-civil service employees have no property interest in continued employment, according to California law." 972 F.2d at 1141.

Under Montana Law, rural fire boards are authorized to establish termination procedures through their bylaws, but they otherwise lack any inherent termination authority. Title 7 Chapter 33 of the Montana Code Annotated governs Fire Protection, and Part 21 of that chapter governs rural fire districts. Rural fire districts are established by the board of county commissioners, Mont. Code Ann. § 7–33–2101, and governed by a board of five trustees, Mont. Code Ann. § 7–33–2104(2). The trustees "shall prepare and adopt suitable bylaws" and "have the authority to provide adequate and standard firefighting and emergency response apparatus, equipment, personnel, housing, and facilities." Mont. Code Ann. § 7–33–2105. They may also "enter into contracts for fire protection services." Mont. Code Ann. § 7–33–2107.

Montana statutes are silent on whether volunteer members of rural fire districts enjoy any removal protections. Paid municipal firefighters enjoy for-cause

12

termination protections, *see* Mont. Code Ann. § 7–33–4123, and mandatory suspension procedures, *see* Mont. Code Ann. § 7–33–4124, while city "volunteer fire departments," established under Part 41 are explicitly exempted from these provisions. Mont. Code Ann. § 7–33–4110. Rural fire districts like Polson, meanwhile, are legally distinct from volunteer fire departments even if they are composed entirely of volunteers. Highlighting this distinction, Montana Code Annotated § 7–33–4510(c) clarifies that "a member of a volunteer fire department provided for in [§] 7–33–4109" does not fall within the definition of a "volunteer firefighter," and is therefore ineligible for worker's compensation. Therefore, no statute addresses whether volunteer members of a rural fire district are subject to removal protections or not.

Nor has the Montana Supreme Court directly addressed whether volunteer members of a rural fire district have a property interest in their volunteer status. In *State v. Robertson*, however, the Court held that a rural fire district board could not suspend volunteers because their bylaws did not "authorize" them to do so. 336 P.3d 367, 371–72 (Mont. 2014) ("[T]he by-laws are altogether silent on the suspension of [fire district] members."). Although *Robertson* was decided in the context of a criminal trespass charge, *see id.*, the Court's reasoning indicates that, depending on the precise language in their bylaws, Board Members may not have had the authority to terminate Hoel at will. If the bylaws contain for-cause

protections or specific removal criteria, they could create a reasonable expectation of continued volunteer status. Viewing Hoel's allegations in the light most favorable to him, as required at this stage of the proceeding, he has alleged a plausible claim that a protected property interest exists.

## C.   Capacity and Immunity

Board Members highlight a lack of clarity in the complaint as to whether they are sued in their official or individual capacities. They argue that, if Hoel has brought claims against them in their official capacity, the entity itself is the proper defendant. If, on the other hand, his claims are against the Board Members in their individual capacity, they enjoy absolute immunity from liability under Montana law and qualified immunity under federal law. Based on the facts alleged in the First Amended Complaint, Hoel is clearly asserting that Board Members' actual conduct, not only a municipal policy or practice directing the conduct, violated his rights. Additionally, Hoel seeks exclusively monetary relief. "Where state officials are named in a complaint which seeks damages under 42 U.S.C. § 1983, it is presumed that the officials are being sued in their individual capacities." *Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1284 (9th Cir. 1994). Thus, Board Members are being sued in their individual capacity.

Because Hoel has not recovered from a government entity or sued the entity to which Board Members belong, Board Members are not entitled to immunity.

Montana Code Annotated § 2–9–305(5) "prohibits an action against a governmental employee based on the same subject matter if recovery has been obtained previously from the governmental entity." *Story v. City of Bozeman*, 856 P.2d 202, 210 (Mont. 1993), overruled on other grounds by *Arrowhead Sch. Dist. No. 75, Park Cnty. v. Klyap*, 79 P.3d 250 (Mont. 2003). "Absent… a recovery from the governmental entity, § 2–9–305(5), MCA (1985), does not bar the filing of an action against the governmental employee." *Id.*; *Todd v. Baker*, 2012 WL 1999529, at *13 (D. Mont. June 4, 2012). Board Members have not alleged any previous recovery on this subject matter from the Board, the district, the county, or the state. Nor has the state been sued as an independent entity on the same subject matter. While Board Members may seek indemnification from the state under § 2–9–305, Hoel's claims against them are not barred.

Board Members may be able to show they are entitled to qualified immunity for the misconduct alleged, but they have not made such a showing at this stage. *See Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) ("Determining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making."). Viewed in the light most favorable to Hoel, his allegation that Board Members terminated his volunteer status in violation of their own bylaws, and therefore without authority under Montana law, violated a clearly established right to due process.

15

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Board Members' motion to dismiss (Doc. 52) is DENIED.

DATED this 15th day of June, 2026.

Dana L. Christensen, District Judge
United States District Court

16